DETERMINED IN THE

## FIRST DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

## DURING THE YEAR 1907.

---

### A. M. Ogle et al. v. James L. Onstott.

#### Gen. No. 13,318.

PARTNERSHIP—*what implied with respect to agreement as to terms of dissolution.* If one partner is given the right, at certain specified periods, to retire from a firm and obtain back his capital invested therein, an implied undertaking exists that in the event of such partner so retiring, he will accept for his interest in said partnership the amount his co-partners agreed in such case to pay to him. Such retiring partner is not entitled to participation in any portion of undivided profits.

Bill in equity. Appeal from the Superior Court of Cook County; the Hon. JOSEPH E. GARY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1906. Reversed and remanded. Opinion filed October 18, 1907.

MUSGRAVE, VROMAN & LEE and BARRETT & BARRETT, for appellants; CHARLES E. BARRETT, of counsel.

GOODRICH, VINCENT & BRADLEY, for appellee; JOSEPH M. GRIFFEN, of counsel.

MR. PRESIDING JUSTICE BAKER delivered the opinion of the court.

Complainant Onstott, appellee here, and the defendants to his bill in equity, appellants here, were partners under written articles entered into February 1, 1900. The articles begin with a recital that an agreement of partnership was entered into between the parties, other than Tandy, July

588

1, 1899, to carry on a retail coal business in Chicago; that Comley Ogle, owning a one-fourth interest in said business, did not agree to said articles of partnership; that the parties aforesaid as a firm purchased Comley Ogle's interest in said business January 19, 1900; that Tandy desired to become a partner by purchasing a one-fourth interest in said business, and then proceeds as follows:

"Therefore, this agreement of partnership entered into this first day of February, 1900, by and between A. M. Ogle, W. W. Hubbard, each owning a one-eighth interest in the said business, J. L. Onstott, owning a one-fourth interest in the said business, A. M. Ogle, trustee for the Island Coal Co., owning a one-fourth interest in the said business, and A. O. Tandy, owning a one-fourth interest in the said business, Witnesseth: The above parties agree to carry on a coal business at the corner of Maplewood avenue and Fulton street, Chicago, under the name of Ogle, Hubbard & Co. for a period of five years from July 1, 1899.

"It is mutually agreed James L. Onstott shall be the manager of the said business so long as his services are satisfactory to the other parties in interest, at a salary which shall be determined as follows: For the year ending May 1, 1900, said salary shall be $1,000, and for the months of May and June, 1900, said salary shall be $100 per month, and for each succeeding year after July 1, 1900, said salary shall be one-fifth of the net profits as determined by the annual statement made on the 30th day of June each year, but in no year shall said salary be less than $1,200. * * * It is agreed by and between the parties hereto that if either said Onstott or Tandy wishes to retire from the business at the end of any year, the remaining partners will return to him the amount of cash he shall have paid in up to that date as part payment for said interest, and shall return to him any unpaid notes that he may have given in part payment for said interest, but no interest is to be paid upon the principal that he may have advanced for such purpose. It is also agreed that such notice of withdrawal must be made in writing to each of the other members of the firm at least ten days before the 30th of June, which shall be deemed to be the end of the business year. * * *

"A list of the accounts and bills receivable and a list of

the accounts and bills payable as they were shown on the books of the company on June 1, 1899, are hereto attached to this agreement and made a part thereof.

"And it is mutually agreed between A. M. Ogle and W. W. Hubbard and the Island Coal Co. as one party hereto, and A. O. Tandy and J. L. Onstott as a party hereto, that the interests purchased by said Onstott and Tandy shall not suffer any loss by reason of the bills and accounts receivable and the cash on hand July 1, 1899, being less in value than the lists of bills and accounts payable July 1, 1899; and in the event that the collections of said bills and accounts receivable and cash on hand amount to a less amount than the bills and accounts payable, as aforesaid, the said Ogle and Hubbard and the Island Coal Co. agree to reimburse said Tandy and said Onstott each to the extent of one-fourth of said deficiency, said reimbursement to be made on their final payment for their interests in said business and to be of date of July 1, 1899.

"On or before the 30th day of June of each year a careful inventory and statement of the business of the company for the preceding year shall be taken and such part of the profits (if there are any) for the preceding year, as may be agreed upon, shall be divided between the owners of said business in proportion to their holdings, and in case said inventory and statement should show loss for the preceding year, said loss shall be charged against each interest in like proportionate manner.    *    *    *

"The said A. M. Ogle, W. W. Hubbard and A. M. Ogle, trustee for the Island Coal Co., hereby agree that they will not withdraw from this partnership during its existence without the consent of said A. O. Tandy and J. L. Onstott, so long as said Tandy and Onstott are members of the firm.

"This agreement supersedes, cancels and renders void any agreement of partnership heretofore entered into by and between any of the parties hereto.

"In witness whereof we have hereunto set our hands and seals this 1st day of February, 1900.

A. M. Ogle,
W. W. Hubbard,
J. L. Onstott,
Island Coal Co., by A. M. Ogle, Trustee,
Alfred O. Tandy."

The duration of the partnership was by the articles fixed at five years and no one of the partners could compel a dissolution of the partnership before the end of that term.

The right given by the articles to Onstott to retire or withdraw from the firm did not give him the right to have the partnership dissolved, but only to withdraw from the firm upon the terms therein stated. The covenant contained in the articles that if Onstott at the end of any business year should exercise the right given to him to retire from the firm, the remaining partners should return to him the amount of cash he had paid in as part payment for his interest and return to him any unpaid notes he had given in part payment for said interest without interest on the principal that he had advanced, implies a corresponding obligation on the part of Onstott, in case he so retired, to accept for his interest in said partnership the amount his partners thereby agreed in such case to pay to him. Broom's Legal Maxims, 667–8. The articles gave Onstott the right to retire from the business, to withdraw from the partnership, at the end of any business year. This right he exercised by withdrawing from the firm, in the manner provided by the articles, June 30, 1903.

The question presented is not as to Onstott's rights upon a dissolution of the partnership, but is as to the amount he was entitled to receive, under the partnership articles, from the remaining partners, the defendants to his bill, on his withdrawal from the firm. The principal question in the case is: was complainant, upon his voluntary withdrawal from the firm and business, entitled to one-fourth of the undivided profits of the partnership? The articles provide that such part of the profits of any year, "as may be agreed upon," should be divided between the partners in proportion to their interest at the end of a business year. The only division of profits that was made, was the division of $1,000 of the profits of the year ending June 30, 1900, of which $250 was paid to complainant. The $1,000 so divided was, by agreement, withdrawn from the partnership funds; the share so paid to each partner became his individual money in which

the other partners had, as between themselves, no interest after such division. But the undivided profits remained partnership funds. Complainant could not compel a division of such profits. His interest in such undivided profits did not differ from his interest in the other assets or property of the partnership.

We think that under the articles, complainant was not upon withdrawing from the firm entitled to any share in the undivided profits, but was entitled to receive for his interest in the partnership, including his interest in the undivided profits, from the remaining partners, the amount he paid in without interest and the return of his notes as provided in the articles.

The only claim made by complainant for compensation for services is for the year ending June 30, 1903. He was entitled to one-fifth of the profits made in that year for his compensation. He was paid on account of his compensation for that year $1,200. At the end of each year preceding that year a statement was made and the profits or loss for the year ascertained as provided in the articles. The statement for the year ending June 30, 1903, was made up in the same manner and upon the same basis as those for previous years, and for the purpose of fixing the compensation complainant was entitled to receive for that year, that statement must, we think, be taken as correct. According to the statement thus made the profits for the year ending June 30, 1903, amounted to $11,943.10,

Of which complainant was entitled to receive as his

    compensation one-fifth.....................$2,388.62

He was paid.............................. 1,200.00

Leaving a balance of salary due him of........:..$1,188.62

    The account to June 30, 1903, should be stated as follows:

Complainant should be charged with his four notes

    $1,000 each.............................$4,000.00

Interest thereon from July 1, 1900, to June 30,

    1903, at six per cent..................... 720.00

One note for.............................. 600.00

Ogle v. Onstott.

| | |
|---|---:|
| Interest thereon from June 1, 1902, to June 30, 1903 ................................. | 39.00 |

| | |
|---|---:|
| Total ............................... | $5,359.00 |
| He should be credited with the purchase price of his interest............................. | $5,000.00 |
| Balance of salary for the year ending June 30, 1903. ................................. | 1,188.62 |
| | $6,188.62 |
| Deducting from this sum..................... | $5,359.00 |

| | |
|---|---:|
| We have as the sum complainant was entitled to receive June 30, 1903, from defendants for his interest in the partnership and for balance of salary ................................. | $ 829.62 |

For this sum, with interest from June 30, 1903, complainant is entitled to a decree and for the return of his five notes against all of the defendants. He is also entitled to a decree on account of the twenty-five per cent of excess paid on account of bills payable, etc., July 1, 1899, over cash on hand and amounts collected on accounts receivable, etc., for $427.66. But he is entitled to a decree for that sum not against all of the defendants, but against the defendants A. M. Ogle, W. W. Hubbard and the Island Coal Co. It was the defendant last named who covenanted with complainant and with defendant Tandy that they, "the said Ogle and Hubbard and the Island Coal Co. agree to reimburse said Tandy and said Onstott each to the extent of one-fourth of said deficiency," etc., and for the amount of such deficiency the parties so covenanting alone are liable.

The decree of the Superior Court will be reversed and the cause remanded with directions to enter a decree in accordance with the views above expressed.

*Reversed and remanded with directions.*